I'm Billy Southern. I represent Thomas Hankton in this direct appeal. The issue that I'd like to address in my brief time concerns the scope of Rule 35A, which is issue Roman numeral 1C in the brief on appeal. The question, I think, boils down to whether the matter that was corrected in Judge Feldman's Rule 35A order was a technical, arithmetical, mistake or other clear error. And I think to look at that, I think it would be helpful to just look very briefly at what happened. So Mr. Hankton, Mr. Thomas Hankton, pleaded guilty under 11C1C plea. At that point, Judge Feldman deferred acceptance of that agreement and directed probation to issue a pre-sentence report. That report was issued in the final version of that report. Probation recommended that Mr. Hankton receive a credit for his prior relevant conduct sentences under 5G1.3. It was outlined in the final report in actual yellow highlights. That's not my yellow highlight. So it was abundantly clear, it should have been clear to sentencing that that's what probation had done. Then in its statement of reasons, Judge Feldman adopted this report. So this report essentially becomes Judge Feldman's reasoning for his sentencing. Between the time that the report was issued and the statement of reasons that it was issued and the sentencing occurred, there was no objection by the government. At sentencing … I do think we know the facts, so I really want to get to the point. At the beginning what you said, I was like, good, because I didn't feel that the briefing did a very deep dive into 35. Sure. So would you announce for us, if you were writing the opinion, besides reversed, what would you say about what the standard is for what other … it's clearly not technical or arithmetic. So the question is, is this an other clear error? Before we know that, we have to know what other clear error means. Please tell me what you would write if you were writing the opinion as to what other clear error means. Well, I think the answer to that … we could look to other things, too. We could look to something like plain error. So would it be plain error to issue a Rule 5G1.3, which in an 11C1C case? I think the answer to that is no. This court has no controlling … And when you say plain error, to me that has a very distinct meaning. It's four prongs. Was there error? Was it clear or obvious? Did it affect substantial rights? And then we have discretion. Nonetheless, we can also decline to correct it, even if it meets the other three prongs. How does that translate at a district court level? Which of those prongs applies, if any? I would say if there were clear controlling legal authority that showed that this order to grant the 5G1.3 credit, that every court in the land, including this court, agreed that that was wrong, perhaps then it would be other clear error. We're not in that situation, so I don't know whether to get all the way to that answer is necessary. I think instead what we can look at is the fact that there's no controlling legal authority in this jurisdiction, in the Fifth Circuit, and that there are two circuits in which a 5G1.3 credit can be granted in an 11C1C case. I think the other thing that 35A tells us that I think is, again, might allow us to not fully answer that, I think, more complicated question is that what 35A shouldn't be doing is providing an avenue for objections to be made after the fact when none were made contemporaneously. This is really an instance, at least with respect to the 35A point and the 300-month reduction, that this would really allow the government to subvert the contemporaneous objection rule. I think between those points... Well, I mean, putting aside what the... So let's say the judge had not done anything and instead the government had simply appealed, and now the government's asserting plain error, which isn't the usual order, but they're still free to do that. I mean, it's always true they didn't make a contemporaneous objection. We get plain error cases, I want to say, not daily maybe, but at least weekly. Sure. And so that's necessarily true. If you're fixing a mistake or, you know, whatever, I mean, it's because you didn't realize you were making a mistake when you made it. And I don't think that if the government was asserting this on appeal, I don't think this would satisfy this Court's rigorous test for what is plain error. I think that that answer... Would it get past the first two prongs? It would not get past the clear error prong. So the second prong. The second prong. Okay. So I think that's where we then find ourselves, that this wouldn't — that this Court does routinely receive briefs urging plain error and very frequently denies them. I think if that's the standard we're looking at, it's quite onerous. It doesn't ask us the scope of 5G 1.3. It asks us whether this Rule 35a motion is the proper way to urge that issue. I think — and also with respect to that point, I think if 35a becomes this essentially motion to reconsider sentence, you know, I'm in the position all the time that I'm in a district court where I disagree with the sentencing determinations. You know, my sense is that what I can do is object and file a notice of appeal. I think what this would do would be to really expand that so that, you know, practitioners like me, if we get — if we reach some point where we disagree, you know, instead of filing a notice of appeal, what we do is seek a 35a motion. On the 13th day, or maybe better yet, the 14th day. Maybe on the 14th day. So — Isn't that another aspect of this? I mean, I'm not accusing the government of doing this on purpose, but instead of being able to argue this and consider this at full at the time that you're supposed to do it, it's — and not even on appeal where you have full briefing and, you know, days and months to write things or whatever. You have no time at all to respond. Does that play in at all? That's exactly the situation that we're in. My understanding, when I'm given a final pre-sentence report, is if I don't — if I don't make an objection, I've waived or forfeited that objection. I think that that's — that that should apply in this context. I think exactly what happened is that, you know, on the 13th day, we get this motion where we're told by the court, you need to respond tonight, because it's an exigency that was created by the government that we had no role in. But, of course, the court realizes that it only has its 14 days. So we are in this position where we need to respond in this expedited fashion to something that should have come up weeks earlier, that, in fact, is raised through this unusual avenue, I think, to reach this result. But it's the wrong — it was the wrong tool. I took you over your time. I'm sorry. I'll reserve the rest of my time for rebuttal. Thank you very much. Well, you reserve two minutes, and then you're sharing with your co-defendant counsel. Good morning, Your Honors. May it please the Court, my name is Peter Tice, and I'm representing Mr. Terrell's mother. And I'd like to start out by emphasizing Mr. Terrell is in a slightly different position than his co-appellants, in that he was granted, controversially, a downward departure by the court. And for purposes of the appeal, the government concedes that that departure was authorized, that it was properly predicated at the sentence, and by implication that the court's Rule 35 order here, on the basis that it didn't have the authority to depart, was an error of fact and law. Does it matter that he was then sentenced below the mandatory minimum? Well, it doesn't matter in the sense, it would have mattered had the government appealed that. They could have appealed that, even though they failed to object to the sentence, even though they failed at the pre-sentence to raise it, they failed to even raise it in Rule 35. Had they appealed, and nothing precluded them from appealing when they filed the Rule 35, they could have done that concurrently, then I would be up here in plain error. They would have the burden to show that it was plain error, and they might be able to establish that. I don't think that's a given in this case, because what could have happened is the court might have been applying 5K223 like it was 5G1, which various circuits have held you can credit below the minimum. So I don't think that's the kind of error you can correct, certainly in Rule 35. So it doesn't matter that it got below the minimum in that respect. So it's waived. I'm sorry? It was waived, but it was the government. It was waived. It was waived. I mean, this is really the fourth bite at the apple they've had. They've raised it properly for the first time in this appeal. I mean, they did mention it in their footnote on the 14th day. Well, and you're saying, though, even under a plain error review, because there's controversy about whether you can credit, so you can have a mandatory minimum that should be given, but he was actually given higher than that, and then the subtraction was the time served, and you're saying there's a debate about whether that subtraction is appropriate with a mandatory minimum. Precisely. There is that debate in the court. So it doesn't reach a clear error. So even if the court had, and if they had raised that ground below, and the court bought that ground, I don't think that would have established clear error, but I'd like to also establish the government is trying to benefit now by raising it so late on appeal, because had this been raised even in the Rule 35 motion, the court would have had the opportunity to say, oh, okay, maybe the minimum should have applied, and I'll reduce the reduction that I gave his sentence to satisfy the minimum. I'll reduce it from 90 and actually increase the sentence from 90 to 120, so I'll only give him a 24-month reduction instead of the 54-month reduction. It would have had the chance to conform its sentence, if it believed that it was constrained by the mandatory minimum, to 120. Didn't have that opportunity, and now the government's trying to ask this court to keep the 144 in place. So they're seeking to benefit from their raising it right now. Do we have the power to say you can't subtract from the mandatory minimum and therefore reform the sentence to 120, or would, if we accepted your argument that it shouldn't have been corrected to 144, but we also accept the argument that the mandatory minimum applies, do we have to send it back for resentencing, or can we reform to 120? I mean, so I'm not a scholar in 1837-42, but I believe it has to be remanded for the court to consider this and do it. I would certainly, you know, if this court did find that it required conformance, I don't think we would object to that, but my understanding of 37-42 is it would have to be put back. But I don't think this court has to get there because even if the court finds, okay, we think, you know, a 5K23, it's fairly plain if you look at the law. You can't credit it below the mandatory minimum. That's still not a plain, clear error for purposes of Rule 35. So even had this been raised, the court would have acted improperly by resentencing. Had it been raised at sentencing, yes, certainly the court could say, look, you're right, you know, I'm going to interpret this guideline provision in this way. Later, it's not the place of Rule 35 to reconsider how the guidelines apply. Do you have an articulation you want to give us of what other clear error means? Well, I haven't thought deeply about that issue. No, and that bothers me because we really need some deep thought on it to me. I'll offer you, you know. Give me your superficial thought. My superficial one is, you know, it's an error that is beyond plain error in the sense that the error has to be clear in the sense that there's either controlling authority in this circuit or that there's a non-controversial reading of the guidelines in law which isn't really open to interpretation, so it's an automatic application. In those cases where the government, you know, where the court makes a mistake, for example, it just applies the wrong guideline, that clearly applies, there's no controversy, where the guidelines' calculations are so clear that there really can be no, maybe we need the habeas, you know, no reasonable jurist could disagree, you know, type of, that it's just that clear. So it's a level above plain error and it has to be controlling and non-controversial, so that's my pitch. Plain error plus? Plain error plus, but I think even under plain error, the way Rule 35 doesn't give the court discretion to reconsider how it applied the guidelines or reinterpret the guidelines, which is what would have happened here had the government presented this argument, and again, they did not. All right, thank you. You saved some rebuttal time. Well, one minute. Good morning. Nisha Sandhu on behalf of Derek Smothers. You have to speak up if you want your voice to be recorded. Nisha Sandhu on behalf of Derek Smothers. With respect to Mr. Smothers, the court was granted, the court called it a credit, but in light of taking into account Mr. Smothers' characteristics, his background, the severity of the offense that he had committed, I mean, he was a low-level player in the overall criminal enterprise, the court considered 168, and I believe it was 168 reasonable and not offending 3553. The Rule 35, though, would not be a proper, it's our position, would not be a proper avenue to come back in at a later time and say that it was a mistake that needed to be corrected because the court specifically asked at the time of sentencing, does the government have any objection? And the government said no. That would have been the perfect time. So was, does that waive this later contention? We would, yes, I would argue yes. You didn't recommend time-served credit at sentencing, did you? Or were you his counsel? I was not. Whoever was representing him didn't, the precinct's report didn't mention time credit for your client. Correct, but the 168 is within the statutory range. So for Count 1, you're looking at 0 to 20, and Count 2, you're looking at 5 to 40. The 14-year sentence, which is what the 168 would be, is clearly within those, within that range. So it doesn't offend the sentence that could be. Unlike Hankton, your PSR didn't say that he should get the time served, right? You're a client's PSR. That is correct. Okay. And unlike Terrell, and I use first names because they're both names, some others, but anyway, unlike Terrell, where there was an actual ruling on a downward departure here, it was just kind of like, I'm just giving credit and moving on. Well, I think the court, it was within the court's discretion to depart, and I'm using that word, but to reduce the sentence to a sentence that was reasonable in light of the factors. Yeah, but I mean, you're using the term, depart has a very clear meaning, and when somebody departs, then it's a guideline sentence, but it's based on a guideline's departure, and then you have to follow the guideline's rules on that, versus a variance, where you can say, well, under the guidelines, you would get yadda yadda, but I think that's unfair because I've considered all this other stuff, and I'm going to grant a variance. And here, the judge wasn't very clear about what he was doing, right, in terms of all that, and that's part of the confusion. That is correct. What about the notion that perhaps he was just actually directing the Bureau of Prisons to do something, and he lacked authority to do that? That was his later holding. What do you think about that, or arguably his later conclusion or holding? He didn't state that originally. To come back, I think, was, I hesitate to call it a do-over, but I think originally, if he had wanted the Bureau of Prisons to, he would have said that. I see a lot of explaining to do. Yes, Your Honor. Good morning. May it please the Court, my name is Ryan McLaren. I represent the United States on this appeal. I'm joined this morning by Assistant United States Attorneys David Howler, Jay Quinlan, and Liz Privatera, who are trial counsel in this case. And as to your point, Judge Clement, the first thing that I'd like to do is apologize on behalf of our office. These were mistakes that we could have caught. These were mistakes that we should have caught, and there's really no excuse for it. So, with that said, I'd like to— I agree completely. Yes, Your Honor. With that said, I'd like to— And I appreciate that point, and that leads me to this problem that I have about showing up on the 13th day when the court only has 14 days, and essentially giving the defendants less than a day. What if they had been in trial, the lawyers, or something like that? I mean, it's just lucky, actually, that they were even around to respond, because I would hate to think I'm on a 24-7 call for every case I ever have as a lawyer. Isn't this just plain unfair? I mean, I don't know that that's the right standard to judge cases, but it just seems wrong and unfair for you all to be able to pull something like this. Well, Your Honor, I did want to start by addressing kind of your questions about what the standard for Rule 35 should be. And I want to make sure I've hit on all those points that you were asking opposing counsel, so if I forget anything, please remind me. But to have jurisdiction under Rule 35, and this is consistent with this Court's, when this Court has looked at Rule 35 before in Olarte Rojas and in Ross, I think in Lopez before that, there's kind of two big boxes that need to be checked off. First is that timeliness concern, the 14 days. Here, no one disputes that the district court acted within 14 days, and that's kind of the only requirement that there is for Rule 35. Of course, the district court can act sua sponte to correct something under Rule 35. So go to your concern about kind of the fairness here. Best practice would have been, of course, to contemporaneously object. Best practice would have been for us to file our motion earlier. I can say, though, that the reason for the filing on the 13th day, this isn't 404B, this isn't severance, this isn't an issue that we deal with a lot. And so in order, before going to the district court to upset these judgments, I know we wanted to get it right. That was the primary concern here. But again, that aside, the 14-day requirement is kind of the only thing that's there. But doesn't the 14 days then kind of inform us on other clear error? It shouldn't be something you have to spend 13 days researching to figure out in a division as just get off the hay truck yesterday. And if it took you 13 days to explore this and research this, then it seems to me that informs the fact that it's probably not another clear error, right there with arithmetic, where 1 plus 1 equals 2, I don't need 13 days to figure that out. Or technical, it doesn't seem to fit in that clause, something that requires a bunch of research and thinking and calling the Department of Justice and all of that. And, Your Honor, I understand that. And so to go to, again, kind of your second point, what constitutes this clear error, of course, the first box to check off is timeliness. The second one is this clear error. And looking at Olarte Rojas, looking at Ross, the way that it's described is an error that would almost be certainly reversed on appeal. And so it's not plain error plus, as opposing counsel said, it's, like you said, Judge Haynes, plain error is kind of its own thing. Would this have been reversed on appeal? Your Honor, I believe so. There was some contention that this wouldn't have satisfied the second prong of plain error. And I think that if you look at the error that the district court identified, their reliance on 3585, that is plain error. It's clear error. It would satisfy the second prong of plain error based on the Supreme Court's case in Wilson. The way that this Court has interpreted Wilson, albeit in unpublished cases in Winder and in a reversal whenever a district court relies on 3585. But the judge didn't say, I hereby direct the Bureau of Prisons to give X months credit on their sentence. He said, I'm crediting their sentence. And to me, those are two different things that make it rather unclear to me, when we're talking about clear error, that he was relying on Wilson at that time versus later in retrospect saying, well, maybe I sounded like I was directing the Bureau and that's the problem. It's hard to know what the judge was thinking at any given point here. But what he actually said to me doesn't direct the Bureau of Prisons to do anything. And, Your Honor, to the extent that this isn't the typical case where we do have kind of that extent of uncertainty about what the judge was thinking. We do have this 35A order where to the extent that there was kind of static between what the district court was saying and what happened with the sentences, that's clarified. The district court clarified, I relied on 3585. I don't think he was that clear. He said it appears that the court relied on 3585, I believe is the exact language. But we do have that in the 35A order, the district court saying this is the error that I'm identifying, this is what I'm going to correct. Well, he could have done what he did and maybe he couldn't have done what he did depending on which rule he relied on. So I guess what we have is when he sentenced, he didn't make it clear which rule he was relying on in reducing the sentence, but he could have under one condition but not under another. And the problem is we don't know what he was doing when he sentenced. Isn't that correct? It doesn't matter. Yeah. Well, to go to your question, Judge Parato, well, I guess I'll start off with your question, Judge Clement. I think . . . It's the same question. Well, to the extent that, again, that we kind of don't know what the district court was doing at sentencing, I believe that that was clarified in the 35A order. But to go to your point, could these sentences have been achieved otherwise, the only sentence that could have theoretically happened with a departure with the 5G, well, the 5G adjustment wouldn't have applied anyway, would have been Derek Smothers's. That's the only one that is within the statutory minimum and maximum, not counter to an 11C1C plea agreement. There are, of course, these kind of secondary errors in addition to the 3585 errors with Thomas Hankin's sentence and with Charles Smothers's sentence. Thomas Hankin's sentence was, of course, should have been pursuant to an 11C1C plea agreement that's stipulated to 300 months. That's clear in the plea agreement, the language of the plea agreement. It's in bold, 300 months is the sentence that he should receive. And the use of 35A to correct Thomas Hankin's sentence up to the 300 months is specifically contemplated in the commentary to Rule 35A. In the 1991 amendments, the committee cited the Second Circuit's decision in United States v. RICO where exactly this scenario played out. So this use of 35A to bring a stipulated to sentence under 11C1C was considered by the committee and blessed by the committee in the commentary. So in addition to that secondary error with Thomas Hankin's sentence, you also have the issue with Terrell Smothers's being below the mandatory minimum. Here, Terrell Smothers did not, this was not a safety valve case. He did not provide substantial assistance. The only two ways that a drug defendant can be sentenced below the mandatory minimum. So this was just, as we say in our brief, no matter which way you look at it in a legal sentence, it needed to be corrected. What the judge actually says is notably the court seemingly credited the sentences of these defendants by implicating 18 U.S.C. 3585. To me, that doesn't tell us what he was thinking at the time. He's kind of looking back at the same record everybody else is looking back on and saying what it looks like. Seemingly credited in the same thing as that's what I thought I was doing. I thought I was telling, I mean, this is a judge who's been a judge a long time and certainly knows the law about what he can tell the Bureau of Prisons to do and what he can't. Your Honor, I understand that and I agree with that about the 35A order was substituting other language where the district court was specifically invoking 5K or 5G. Again, it's sort of unclear what the district court was doing, if you read the transcripts. If it's unclear what the district court was doing, then how can it be other clear error under this very narrow, time-sensitive rule? Well, at least for Thomas Hankin and for Terrell Smothers, the 3585 is just one of the two ways that it was a clear error. So you have the 11C1C and you have the sentence below the mandatory minimum. And doing away with the credit for time served makes those sentences correct. The sentences that all three of these defendants have today, there's nothing wrong with them. I feel like that's a point that kind of gets lost in the briefing. Except that they didn't have the benefit of in-person sentencing. I mean, the whole sentencing's an unusual animal to me because you can't just change your mind later or whatever, like you can in a civil case, you have a summary judgment here, you go, I'm going to grant summary judgment, then when you sit down to write the judgment, you go, oh my gosh, there's too many fact issues and you deny it, no one would say a word. But in sentencing, you can't do that because the defendant has a right to be present and has a right to participate. And the defense attorney has a right to make arguments as does the government's attorney. So it's a different animal and you can't just decide later, wow, there's nothing wrong with fixing this. And Rule 35 doesn't allow for that. It's very narrow. Whatever other clear error means, we know it doesn't mean I woke up one day and decided I didn't like how this came out. And Your Honor, that's right. If these were sentences that were otherwise within the guidelines, otherwise reasonable and legal, that we just didn't agree with, you're right, 35A couldn't be used to correct those sentences. But where there is this clear error, 35A on its face and in the cases that interpreted, Olarte, Rojas, Ross, does allow for this, just to correct the error that would otherwise be reversible on direct appeal. I do want to point out that I kind of hinted at this earlier, that there's nothing wrong with these sentences. There was some kind of questions about fairness here. They're within the guidelines, they're within the statutory minimum and maximum, and notably, they are the result of favorable plea deals for these defendants. We point this out in the briefing, but all three of these defendants face considerably more time without the plea deals and two of them face life sentences without the plea deals. So at the end of the day, what you have here are sentences that, again, not only fair, not only the result of favorable plea deals, but most importantly, for the purposes of this appeal, error-free. What do we do with the one where the oral sentence is written judgment? That's Charles Mothers, Your Honor, where the oral sentence was to the 90 months and then the written judgments were 144 months consistently. The oral pronouncement of sentence controls, so to the extent that there's a discrepancy between those, the 90-month sentence, the one below the mandatory minimum would control. So if the judge intended to reduce the sentence, we couldn't send it back to say maybe he wanted to give 120? I mean, there's nothing that says that he was at 144. It looked like he intended to reduce it somewhat, and we're not clear what he intended, but he couldn't go below 120, but maybe he would have reduced it to 120 or we stuck with the 144. And, Your Honor, the relief that would be available to Terrell's Mothers, that's also a little unclear to me. To me, it seems like the only two avenues here are to keep the 144 or to go back for resentencing, to either say that this was a clear error, that giving the time served was, and then to do away with the time served and put him back to 144, or that there was no clear error, which would, of course, require finding that not only the sentence below the mandatory minimum, frankly, I don't really know what the legal foothold for that would be, to send it back for resentencing. The argument that he's making is that it is, well, actually, he didn't make an argument on this, but the argument that would be made is that it's not clear you can't credit a mandatory. So let's say the judge had wanted to give the mandatory minimum just without regard to any other sentence, never been sentenced anywhere else, would have given the 120, but now it turns out he served this other state sentence that he couldn't credit a mandatory minimum, and there appears to be some confusion on that. And to me, that makes it not clear error. So the argument would be it wasn't clear error because there's confusion over it, and so he should get the 90 months. That's the argument on his side. I understand the argument on your side, but that's the argument on his side. And, Your Honor, we cite to Carter, I believe, and to Phillips. I do believe that it was clear error to go below the mandatory minimum here. In the drug context, the only two are for substantial assistance and in safety valve cases, neither of which is present here. This kind of, there is no, at least based on my research, case allowing for this kind of 5K time served credit to dip below the mandatory minimum in the drug context. And, again, I don't want to repeat myself, and I think you and I read the 35A order differently, Judge Haynes, but we do have the district court saying in the 35A order that I, not in so many words, but I may have been giving, talking in this departure language during the sentencing, but it appears that I based my decision on 3585. That's also based on a legal error that he didn't have the discretion to do this, but I think he did have the discretion to do it under either the 5G. It would be under the 5K, I think. Or under, depending on which one, because Hankton had, was on parole, so he arguably had an undischarged sentence. So on him it would be 5G1, on the other it would be the 5K223, I don't know, whichever. And, Your Honor, I'd be happy to talk about the issue with the parole. I don't know if it's totally necessary for purposes of this argument, but I would be happy to talk about it. Well, I mean, again, we're not talking about how would this come up if everything was preserved error and whatever, what's the right answer? That's only a small piece of the question. The question is, is the right answer so darn clear that anybody would know it? And it doesn't sound like even your office, with all of your resources and whatever, knew it. It took you 13 days to figure it out. So I'm questioning how clear this error can be if we're spending this much time running in circles around it. And, Your Honor, I would point, again, to the Supreme Court's decision in Wilson and to this Court's interpretations of Wilson in Winder and in Morgan. Granted, those are in unpublished cases, but this isn't plain error. We don't have to have that, at least the cases that have looked at Rule 35, don't use that same language, where it's binding law, where it's controlling authority. Okay. So what is your, announce your, I've asked everyone else, so let me give you a chance to write our opinion for us on this sentence. What is other clear error? Please write what you would tell us, say what we would write, what you would have us write. The language it is consistently, that this Court has consistently used, is an error that would almost certainly result in reversal on appeal. The two times that this reliance on 3585 has gone up and this Court has considered it, in Winder and in Morgan, it has resulted in a reversal. Those are unpublished cases, but to me, that constitutes clear error for purposes of Rule 35. It also would constitute clear error for the second prong of plain error, just looking at Wilson. This Court has interpreted Wilson to mean that, and looking at Wilson, it also says that, that a district court's reliance on 3585 is that kind of reversible error. If there are no further questions. The Government requests that the Court affirm the convictions and sentences of Thomas Hankton, Derrick's mothers, and Terrell's mothers. Thank you. Notwithstanding the representations in Judge Feldman's order, his reasoning that this was not 3585 is clear. The Court adopts the pre-sentence investigation report without change. That means that, notwithstanding anything that's in the 35A order, but in response to Judge Potter, your question, what do we know he relied on? He relied on 5G 1.3. That's what this tells us without any ambiguity. The broader question of what probation wants and whether this is an issue as between 2248, probation's report, memorandum, in which they explain why they applied this, is in the record. Probation explains, we called the Bureau of Prisons and we wanted to know what to do with this. Bureau of Prisons also in the sort of exigent response to the 13-day filing. October 26, 2016. So they're trying to explain their reasoning. They're saying, we contacted the Bureau of Prisons. They told us the only way to apply these related conduct prior sentences was through this 5G 1.3. That's why we did what we did. So this was the best efforts of probation, of defense counsel, of the judge. There was no objection by the government. That's where we stood. This is a complex issue. And I think, Judge Haynes, you know, looking at your concurrence, I'm sorry, the extent of rehearing in Henderson, you know, the question comes up, what isn't this? And what you said is, this is not a situation where the district court could simply have changed its mind. The Rule 35a strictures seem more directed at avoiding flip-flopping. And I think that's really what we see here, is we see this sort of flip-flop, oh, I'm changing my mind. And so while it might be difficult to define exactly what the limits of 35a is, this doesn't That's why I wanted us to take it on bond. But I was not in the majority on that. But ultimately, Henderson was reversed on another ground. Well, thank you very much. In my one minute, I just want to discuss the standard a little bit more. I've been thinking about it. Now, if the government wants clearly reversible, whatever, I would gloss that and clearly reversible on an error that was manifest at sentence. So the sentence had to be, the record had to be clear that the court was acting on an erroneous basis. And what is clear is that here, there was a reading of the court's actions at sentence, which it did act lawfully. It could have given a 5K223 interpretation below the standard mandatory minimum in my case. My co-counsel's case, it could have been making determinations. It wasn't clear. It wasn't until later, that 13th day and 14th day, that it attempted to kind of clear up or clean up the record. But if the record wasn't manifest at that sentence, I would have— Does making a Rule 35 motion preserve the error for appeal? No. No, it doesn't. And just, you know, I do want to make clear that we are making the argument that it's not clear error, even though I didn't do that. Because, again, the legal sentence was only brought up in their response brief. My principal brief was all about how the judge erred, and I don't think there's no question. Then they come back and tell me, well, it's a minimum sentence. So I had to reply to that in my reply. And I relied on the procedural issue, but I do certainly rely on the fact that it's not clear error for the legal sentence in this case, where the court could— Could you answer the point about that in drug cases specifically, going below a mandatory minimum is very severely prescribed, and this isn't one of the exceptions? Well, co-counsel during the break gave me some cases. There are cases, Seventh Circuit, Ninth Circuit, I believe in the Second Circuit, where I've held that 5G-1 is an adjustment. Even I think I believe in drug cases. I'll have to go back and look at those cases. But in drug cases, it's considered an adjustment to sentence. So the total time you serve is what it counts. So that state time is added to the federal time to put you over the minimum. So I think the court could have done that. It might have interpreted 5K-23 to do that as well. It may not have been a correct interpretation, but that's not something that can be corrected in Rule 35. So that's how that happens. Thank you. All right. Thank you. Ms. Hando. Judges, with respect to Derek, there would be no additional arguments. All right. All defense counsel are court-appointed. We want to thank you very much for your work.